UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TERRANCE TRENT BATISTE, | |
| *Plaintiff,* | CASE NO. 7:20-cv-00258 |
| v. | MEMORANDUM OPINION |
| CORRECTIONAL OFFICER POLLARD, *ET AL.*, | JUDGE NORMAN K. MOON |
| *Defendants.* | |

In this action, *pro se* plaintiff Terrance Trent Batiste, a federal prisoner, asserts civil rights claims pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 389 (1971). Batiste has alleged his claims against four individual defendants, all of whom worked at the United States Penitentiary in Lee County ("USP Lee"), where Batiste was incarcerated at the time of the events in question. The defendants are all correctional officers (Pollard, Robbins, Price, and Lane). Defendants have filed a motion to dismiss, or in the alternative for summary judgment, on grounds that Batiste failed to exhaust administrative remedy procedures prior to filing this lawsuit. Batiste was granted permission to file a tardy response. Defendants have replied in support of their motion.

BACKGROUND

The substantive basis of Batiste's claims is an alleged excessive use of force constituting cruel and unusual punishment, which occurred on March 8, 2020. Batiste had been taken from his regular cell to the Special Housing Unit (SHU) because he had

been observed in a sexual act. Defendants escorted Batiste to the SHU. After they arrived at the SHU, Batiste alleges that defendants punched and kicked him in the head, stomach, torso, and back, for as long as one minute. Batiste alleges that Pollard used a razor knife to cut off Batiste's clothing, and that Pollard sliced open Batiste's arm. Pollard agrees that he removed Batiste's clothing with a cutting tool, but reported that the cut to Batiste's arm occurred when, and because, Batiste attempted to assault staff and pulled away from Pollard. Batiste alleges that defendants placed him in full body restraints that were wrapped so tightly they left visible marks which were still visible as of the date he wrote his complaint.[1]

The cut to Batiste's arm was "approximately a 5cm x 3cm laceration," or about 1.2 inches by 2 inches. Batiste was taken off-site for medical attention, and received about 10 sutures. He returned to the SHU a few hours later.

The parties do not dispute that Batiste failed to exhaust a relevant administrative remedy prior to filing this lawsuit. Batiste, however, argues that his efforts to initiate an administrative remedy process were thwarted in various ways by USP Lee.

## LEGAL STANDARDS

### A. Summary Judgment

The motion before the court is defendants' motion to dismiss, or in the alternative for summary judgment. According to Rule 12(d), if matters outside the pleadings are presented to and not excluded by the court, a Rule 12(b)(6) motion must be treated as one

---

[1] Plaintiff's complaint was mailed to the court, bearing a postmark dated April 28, 2020.

for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Defendants have submitted various evidentiary materials with their motion, including an incident report, correctional officer statements, a record of Batiste's discipline, Batiste's treatment records for the cut to his arm, Batiste's mental health records, and an affidavit submitted by Destiny Spearen, who is the paralegal for the Consolidated Legal Center at the Federal Correctional Center, serving federal penal institutions including USP Lee, attaching Batiste's administrative remedy records [hereinafter "Spearen's first affidavit"]. With their reply in support of their motion, Defendants have submitted another affidavit executed by Spearen, and her additional exhibits [hereinafter "Spearen's second affidavit"]. The court has considered the evidentiary materials presented by defendants, and will therefore treat defendants' motion as a motion for summary judgment.[2]

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party.

---

[2] Batiste has not had opportunity to respond to Spearen's second affidavit, which was submitted with defendants' reply. However, in this case the court has considered defendants' submissions including Spearen's second affidavit, and has therefore chosen to apply the Rule 56 summary judgment standard rather than the Rule 12(b) dismissal standard, while also taking a lenient view of Batiste's arguments and allegations. Because the court has decided to deny the motion for summary judgment on the present record, Batiste is not prejudiced by the court's consideration of defendants' submissions.

*Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).[3] In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247-48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. Am Int'l, Inc.*, 936 F.2d 924, 930 (4th Cir. 1990).

In addressing the summary judgment arguments, the Court must hold Batiste's *pro se* complaint, "however inartfully pleaded" it may be, "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must also draw all reasonable inferences from the *facts* in favor of Batiste, as the nonmoving party. *Williams v. Staples, Inc.*, 372 F.3d 661, 667 (4th Cir. 20014). However, Batiste "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*,

---

[3] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

477 U.S. at 256. Mere groundless generalizations and unsupported speculations cannot create a genuine issue of fact and are thus insufficient to defeat a summary judgment motion. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992). In the context of a motion for summary judgment for failure to exhaust administrative remedies, a bare assertion that is "unsupported by any detail" will not satisfy a prisoner plaintiff's "burden of showing that remedies were unavailable." *Rodrigues v. Hamilton*, 7:20-cv-338, 2021 WL 413530, *6 (W.D. Va. Feb. 5, 2021).

### B. Exhaustion under the Prison Litigation Reform Act

The Prison Litigation Reform Act (PLRA) requires a prisoner plaintiff to exhaust his available administrative remedies prior to bringing suit. 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and … unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). District courts may not "excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. *Jones*, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or that administrative remedies were unavailable. *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Graham v. Gentry*, 413 Fed.App'x 660, 663 (4th Cir. 2011).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has explained that an

administrative remedy is considered unavailable when: (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) it is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-60; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process … the process that exists on paper becomes unavailable in reality.").

## ANALYSIS

**A. The BOP's Administrative Remedy Procedure**

The BOP's administrative remedy procedure is relatively straightforward, and basically involves three steps: (1) the filing of an informal complaint, (2) the filing of a formal complaint, and (3) two levels of appeal. The first step of a claim alleging staff misconduct requires the inmate to "present an issue of concern informally to the staff." 28 C.F.R. § 542.13(a). Each Warden has established procedures for inmates at his institution to do so. *Id*.

Second, if an inmate is unable to resolve his complaint informally, he may file a formal written complaint (an "administrative remedy request") with the institution on the proper form within twenty calendar days of the incident at issue. *Id*. § 542.14(a). Generally, an inmate must obtain the appropriate form (a BP-9 form) and return it to his correctional counselor. *Id*. § 542.14(c)(1), (4).

6

Third, an inmate has two levels of appeal that he may pursue. If an inmate is dissatisfied with the institutional Warden's response, he may appeal to the Regional Director within twenty calendar days of the Warden's response, using the appropriate form (a BP-10 form). *Id*. § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, using the appropriate form (a BP-11 form), within thirty calendar days of the date the Regional Director signed the response. *Id*. Appeal to the General Counsel is the final administrative appeal. *Id*. § 542.15(a).

There is an alternative process available to a BOP prisoner who fears for his safety in filing a complaint or informal complaint at the prisoner's facility. In such circumstances, the prisoner may file a "sensitive" administrative remedy request directly to the appropriate Regional Director. 28 C.F.R. § 542.14(d)(1). The prisoner is to clearly mark the word "Sensitive" upon the administrative remedy request form and explain the reasons for designating the request as sensitive. *Id*. The Regional Director determines whether to accept the administrative remedy request as a sensitive matter, and informs the prisoner accordingly. *Id*. If the Regional Director rejects the prisoner's effort to have the administrative remedy request treated as a sensitive matter, the prisoner may opt to pursue the matter with the Warden of his institution. *Id*.

### B. Batiste's Failure to Exhaust

As grounds for their motion, defendants argue that Batiste failed to exhaust a relevant administrative remedy process regarding the alleged assault. The evidentiary submissions that are most pertinent to defendants' motion are the two affidavits executed

7

by Spearen. Spearen's first affidavit describes in a general manner the administrative remedy process that is available to BOP inmates. Spearen's first affidavit does not, however, describe how the administrative remedy procedures may specifically apply to SHU inmates, or to the SHU at USP Lee. Spearen does provide a record of the administrative remedy processes which Batiste initiated, all of which are irrelevant because they were initiated before Batiste was at USP Lee, and well prior the incident of March 8, 2020.

It is only in Spearen's second affidavit, submitted with defendants' reply brief, that she addresses how the administrative remedy procedure applies to inmates who are in SHU.[4] According to Spearen's second affidavit, "Unit Team staff members conduct **weekly rounds** in the SHU,[5] and inmates wishing to file an administrative remedy may request the appropriate forms from the appropriate staff member at that time [emphasis added]." The completed form is given to the appropriate staff member to enter into the database where administrative remedy records are maintained. Batiste has not had an

---

[4] Defendants did state in their opening brief, without specific support through Shearen's first affidavit, that Unit Team members, including Correctional Counselors, "regularly conduct rounds" in the SHU, and that "[i]f an inmate requests an administrative remedy form from his Correctional Counselor during the SHU rounds, the Correctional Counselor provides them with the appropriate form and returns to collect the completed form."

[5] It is unclear from Spearen's second affidavit whether different staff members might make different rounds, on different days, and if so whether all of them are able to provide administrative remedy forms to SHU inmates. If such is the case, SHU inmates might have multiple opportunities each week to request, and return, administrative remedy forms. However, as defendants' submissions do not make this clear, the court will not so speculate.

opportunity to respond to Shearen's additional information about administrative remedy procedures for SHU inmates, as this information was presented with defendants' reply.

The administrative remedy process, as described by Spearen, appears to operate somewhat differently for inmates who are housed in the SHU, compared to inmates in regular housing. The differences appear to make the administrative remedy process somewhat less accessible for SHU inmates. If administrative remedy forms are only available to SHU inmates once a week during weekly rounds, then an inmate housed in SHU has as few as two, and no more than three, opportunities to request a form to initiate administrative remedies, within the 20 days allotted to do so.[6] It is unclear whether the SHU inmate must prepare the completed administrative remedy form on the spot, or else wait for the next weekly round, to submit the administrative remedy form.

Another uncertainty on this record, is whether the sensitive administrative remedy forms of SHU inmates are submitted in the same manner as other administrative remedies initiated by SHU inmates. Whereas the procedure for initiating a sensitive administrative remedy request usually gives inmates an opportunity to communicate directly with the Regional Director, the submission procedures for SHU inmates appear to introduce an

---

[6] While Shearen's affidavits do not specifically describe how inmates in who are not in SHU housing may obtain and submit administrative remedy forms, they equally do not indicate that inmates in regular housing must rely on staff making weekly rounds to supply and submit the forms. It is inferred that this special, less accessible, procedure for obtaining and submitting administrative remedy forms, applies only to SHU inmates.

extra step that apparently entails the cooperation of facility staff to transmit the sensitive administrative remedy form to the Regional Director.[7]

There appears to be no dispute that Batiste remained in the SHU throughout the 20-day time frame allowed for him to initiate an administrative remedy request under 28 C.F.R. § 542.14(a).[8] It follows that Batiste would have had to use the special procedures for SHU inmates to initiate any administrative remedy request about the events of March 8, 2020.

Batiste describes three attempts to initiate an administrative remedy request from the SHU. First, Batiste alleges that he tried filing administrative remedies through the institution and received no response. This is the sort of general and vague allegation that, standing alone, would usually not withstand a motion for summary judgment.

Second, Batiste makes a much more specific allegation that he "tried to send a BP-9 (sensitive) to the region because being assaulted by staff classifies as a[] sensitive issue." Batiste claims that this attempt failed because "there is no legal mail procedure in the special housing unit to where I can seal my mail outgoing." It is unclear whether

---

[7] It is also unclear from this record, how the administrative remedy process proceeds after an SHU inmate successfully submits a completed administrative remedy form, such as the question of when and how an SHU inmate receives initial response to the administrative remedy request. It is unnecessary for the court to reach later steps in the administrative remedy process, however, because the question at hand is whether Batiste may have been impeded from initiating an administrative remedy request and/or a sensitive administrative remedy request, by virtue of his housing in the SHU.

[8] Batiste's disciplinary sanction was 45 days in disciplinary segregation. Thus, it appears that Batiste remained in the SHU from March 8 until about April 22, 2020, for the infraction committed on March 8, 2020.

Batiste is alleging a general issue with how legal mail is handled for SHU inmates. Nevertheless, Batiste has described, with some specificity, a failed but plausible effort to appropriately lodge a sensitive administrative remedy request.

Third, Batiste alleges he attempted to send the sensitive administrative remedy request by regular mail, but it was thrown away. This is another rather vague allegation. However, if Batiste's letter was addressed to the Regional Director, then the court cannot summarily disregard the possibility that such a letter might be intercepted and discarded by prison staff. The very purpose of having a special procedure whereby inmates might bring certain issues to an authority outside the institution where they reside is to avoid bias and/or interference by institutional staff. It is not entirely inconceivable that a sensitive administrative remedy request form might be thrown out by staff.

Defendants have countered, with Shearen's second affidavit, that BOP records show that 53 "institutional remedies" were successfully initiated by inmates in USP Lee's SHU, using BP-9 forms, during the one-year period from February 25, 2020 through February 24, 2021. Thus, an average of approximately one institutional remedy per week over a one-year period. However, the fact that some SHU inmates were able to successfully initiate institutional remedy procedures, using BP-9 forms, does not conclusively disprove Batiste's allegations that he was obstructed from initiating an administrative remedy procedure, or sensitive administrative remedy procedure, while he was housed in the SHU.

Defendants also argue that Batiste was able to successfully mail his complaint[9] and other court pleadings, and that this demonstrates he could as well have initiated a relevant administrative remedy process from the SHU. Batiste's mailings to this court equally do not conclusively disprove Batiste's claims that his attempts to send a sensitive administrative remedy form to the Regional Director were thwarted.

On this record, Batiste's allegations are specific enough to survive summary judgment. Batiste describes specific actions he took and/or attempted to take that are within the parameters of the actions that a reasonably diligent inmate might undertake to initiate a relevant administrative remedy process. And he has described the manner in which he believes those efforts were obstructed. *See Johns v. Lovell*, 7:19-cv-409, 2020 WL 5507535, *9 (W. D. Va. Sept.11, 2020). Batiste's allegations are not so plainly unconvincing that defendants are entitled to summary judgment. On the basis of their own submissions, defendants have not shown a complete absence of any basis for a reasonable jury to return a verdict in Batiste's favor, on the issue of administrative remedy unavailability. Even though a more fully developed record might ultimately disprove Batiste's assertions that administrative remedies were not available to him, the court cannot grant summary judgment on the present record.

CONCLUSION

---

[9] Batiste's complaint was postmarked April 28, 2020. Batiste may have left the SHU by the time he mailed his complaint in this lawsuit.

For the foregoing reasons, the court will deny defendants' motion for summary judgment pursuant to Rule 12(d) and Rule 56 of the Federal Rules of Civil Procedure.

An appropriate order will be entered.

Entered: September 28, 2021.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE